**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| MARC JACOBS TRADEMARKS, LLC and MARC JACOBS INTERNATIONAL, LLC, | |
| Plaintiffs, | Case No. 20-cv-00788 |
| v. | |
| THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A," | |
| Defendants. | |

**COMPLAINT**

Plaintiffs Marc Jacobs Trademarks, LLC ("MJT") and Marc Jacobs International, LLC ("MJI") (collectively, the "MJ Entities" or "Plaintiffs") hereby bring the present action against the Partnerships and Unincorporated Associations identified on Schedule A attached hereto (collectively, "Defendants") and allege as follows:

## I.  JURISDICTION AND VENUE

1.      This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28 U.S.C. § 1331.

2.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in the United States, including Illinois, through at least the fully interactive, e-commerce stores[1] operating under the seller aliases identified in Schedule A attached hereto (collectively, the "Seller Aliases").  Specifically, Defendants have

---
[1] The e-commerce store urls are listed on Schedule A hereto under the Online Marketplaces.

targeted sales from Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold products using infringing and counterfeit versions of the MJ Entities' federally registered trademarks to residents of Illinois. Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

## II. INTRODUCTION

3. This action has been filed by the MJ Entities to combat ecommerce Internet store operators who trade upon the MJ Entities' reputation and goodwill by offering for sale and/or selling unauthorized and unlicensed products, including handbags, clothing, and jewelry using infringing and counterfeit versions of the MJ Entities' federally registered trademarks including, without limitation, the federally registered MARC JACOBS trademark (the "Counterfeit MARC JACOBS Products"). Defendants create e-commerce stores operating under one or more Seller Aliases that are advertising, offering for sale and selling Counterfeit MARC JACOBS Products to unknowing consumers. E-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them and that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their counterfeiting operation. The MJ Entities are forced to file this action to combat Defendants' counterfeiting of the registered MARC JACOBS Trademarks (defined below), as well as to protect unknowing consumers from purchasing Counterfeit MARC JACOBS Products over the Internet. The MJ

Entities have been and continue to be irreparably damaged through consumer confusion, dilution, and tarnishment of their valuable trademarks as a result of Defendants' actions and seek injunctive and monetary relief.

## III.  THE PARTIES

**Plaintiffs**

4.      Plaintiff Marc Jacobs Trademarks, LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 72 Spring Street, New York, New York 10012.

5.      Plaintiff Marc Jacobs International, LLC is a limited liability company organized and existing under the laws of Delaware, having its principal place of business at 72 Spring Street, New York, New York 10012.

6.      The MARC JACOBS brand was founded in 1984 by the iconic designer Mr. Marc Jacobs and has become a leader in the design, marketing, and distribution of premium fashion apparel, accessories and lifestyle products.  Since 1984, Plaintiffs have sold high-quality apparel, accessories and other products, all of which prominently display their famous, internationally-recognized and federally-registered trademarks, including the MARC JACOBS trademark and the iconic "JJ" design (collectively, the "MARC JACOBS Products").  MARC JACOBS Products have become enormously popular, driven by the MJ Entities' arduous quality standards and innovative design.  Among the purchasing public, genuine MARC JACOBS Products are instantly recognizable as such.  In the United States and around the world, the MARC JACOBS brand has come to symbolize high quality and prestige.

7.      Mr. Marc Jacobs has received substantial recognition from the Council of Fashion Designers of America, Inc. ("CFDA"), including being recognized on multiple occasions as the Womenswear Designer of the Year, Accessory Designer of the Year, and Menswear Designer of the Year.  Mr. Marc Jacobs received a Lifetime Achievement Award from CFDA in 2011.

8.      In 2019, Mr. Marc Jacobs was presented with MTV's inaugural "Fashion Trailblazer Award" at the MTV Video Music Awards, in partnership with the Council of Fashion Designers of America.  MTV said the award was created to "honor a fashion designer who has made an indelible impact within the world of music-artist fashion."  Mr. Marc Jacobs arrived at the awards show accompanied by models wearing some of his most "iconic" looks, including pieces previously worn by Lady Gaga, Taylor Swift, Rihanna, and Beyoncé.

9.      Genuine MARC JACOBS Products are distributed and sold to consumers through company-operated stores throughout the United States, including in high-quality department stores in Illinois such as Bloomingdale's, Nordstrom, Neiman Marcus, and Saks Fifth Avenue, and through the marcjacobs.com website which ships throughout the US (including in Illinois) and to select international destinations.

10.     The MJ Entities have continuously sold MARC JACOBS Products under the MARC JACOBS trademarks in the United States for many years.  The MJ Entities incorporate a variety of distinctive marks in the design of the various MARC JACOBS Products.  As a result of their long-standing use, the MJ Entities own common law trademark rights in these trademarks.  The MJ Entities have also registered trademarks with the United States Patent and Trademark Office.  MARC JACOBS Products typically include at least one of the federally registered MARC JACOBS trademarks.  Often, MARC JACOBS trademarks are displayed in more than one location on a single product (*e.g.*, interior label, lining, or external name plate or

hardware).  The MJ Entities use their trademarks in connection with the marketing of the MARC

JACOBS Products, including the following marks, which are collectively referred to as the

"MARC JACOBS Trademarks."

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 1,967,123 | MARC JACOBS | April 9, 1996 | For: handbags, knapsacks, back packs, tote bags, satchels, clutch bags, sling bags, bucket-shaped bags, waist packs, purses, cosmetic bags, change purses, wallets, key cases in Class 018.<br><br>For: women's apparel, namely dresses, skirts, blouses, pants, jackets, coats, shoes, scarves, and hats; knitwear, namely sweaters, coats, dresses, skirts, pants, gloves, hats and scarves; belts; bras, panties, teddies, full slips, half slips and hosiery in Class 025. |
| 2,771,932 | MARC JACOBS | October 7, 2003 | For: cosmetics and fragrances, namely, perfume, cologne, personal deodorant, fragrant bodycare cream, lotion and cleanser; hair shampoo in Class 003. |
| 2,046,695 | MARC JACOBS | March 18, 1997 | For: men's apparel, namely, shirts, pants, jackets, ties, shorts, coats, suits, shoes, hats, sweaters, gloves, belts, underwear and hosiery in Class 025. |
| 3,038,709 | MARC JACOBS | January 10, 2006 | For: jewelry, namely, bracelets, rings, key rings, earrings, brooches, necklaces, pins, medallions, buckles, charms, wrist watches, watches in Class 014. |
| 3,069,758 | MARC JACOBS | March 21, 2006 | For: sunglasses, eyeglasses, eyeglass frames, and eyeglass cases in Class 009. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 4,388,100 | MARC JACOBS | August 20, 2013 | For: jewelry; costume jewelry; watches in Class 014. |
| 4,411,975 | MARC JACOBS | October 1, 2013 | For: cases for mobile phones; carrying cases for cell phones; cell phone cases; cell phone covers; protective covers and cases for cell phones; laptop carrying cases in Class 009. |
| 4,517,198 | MARC JACOBS | April 22, 2014 | For: sunglasses; sunglass frames; sunglass cases; eyeglasses; eyeglass frames; eyeglass cases; cases for mobile phones; carrying cases for cell phones; laptop carrying cases; USB hardware; headphones; protective cases for tablet computers; protective covers for tablet computers; electronic book readers; digital book readers; protective sleeves for tablet computers in Class 009. |
| 4,735,405 | MARC JACOBS | May 12, 2015 | For: organization of fashion shows for entertainment purposes in Class 041. |
| 4,735,406 | MARC JACOBS | May 12, 2015 | For: retail store services and on-line retail store services featuring clothing, footwear, headwear, handbags, leather goods, luggage, belts, eyewear, jewelry, watches, books and stationery items, cases for mobile phones, laptop carrying cases, headphones, protective cases, covers and sleeves for tablet computers, fragrances, cosmetics, skin and personal care products, hair accessories and ornaments in Class 035. |
| 5,317,231 | MARC JACOBS | October 24, 2017 | For: cosmetics and make-up; Nail polish in Class 003. |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| 5,515,226 | MARC JACOBS | July 10, 2018 | For: smartwatches; wearable portable fitness activity trackers; downloadable mobile applications for measuring and monitoring sleep, movement and activity and tracking individual goals in Class 009. |
| 5,101,542 | | December 13, 2016 | For: sunglasses; sunglass frames; sunglass cases; eyeglasses; eyeglass frames; eyeglass cases; cases for mobile phones; carrying cases for mobile phones; laptop carrying cases; USB hardware; headphones; protective cases for tablet computers; protective covers for tablet computers; protective sleeves for tablet computers; camera bags; electronic book readers; digital book readers in Class 009. |
| 5,101,543 | | December 13, 2016 | For: clothing, namely, jerseys, shirts, t-shirts, tank tops, blouses, polo shirts, sweaters, cardigan sweaters, pullovers, hoodies, sweatshirts, pants, jeans, shorts, dresses, skirts, suits, blazers, jackets, coats, overcoats; belts; ties; scarves; shawls; bandanas; waistcoats; gloves; mittens; pajamas; footwear, namely, shoes, boots, sandals and slippers; headwear, namely, hats and caps in Class 025. |
| 5,120,532 | | January 10, 2017 | For: handbags; knapsacks; back packs; rucksacks; tote bags; beach bags; carry-all bags; canvas shopping bags; textile shopping bags; satchels; clutch bags; shoulder bags; sling bags; bucket-shaped handbags; purses; cosmetic bags sold empty; change purses; |

| REGISTRATION NUMBER | REGISTERED TRADEMARK | REGISTRATION DATE | INTERNATIONAL CLASSES |
|---|---|---|---|
| | | | wallets; leather pouches; business card cases; credit card cases; toiletry cases sold empty; diaper bags; duffel bags; messenger bags; crossbody bags; briefcases; traveling bags; garment bags for travel; umbrellas in Class 018. |
| 5,200,762 |  | May 9, 2017 | For: jewelry, namely, bracelets, arm cuffs, bangles, rings, earrings, necklaces, brooches, pins, buckles for watchstraps, charms; fashion jewelry; watches; wrist watches; watch bands; watch straps; watch cases; watch boxes; key chains as jewelry not made of leather in Class 014. |
| 5,335,906 |  | November 14, 2017 | For: cosmetics and make-up in Class 003. |
| 5,520,558 | MARC JACOBS  | July 17, 2018 | For: retail store services and on-line retail store services featuring clothing, footwear, headgear, handbags, cosmetic bags, backpacks, tote bags, bag straps, bag charms, leather goods, wallets, belts, eyewear, jewelry, keychains, patches, watches, books and stationery items, cases for mobile phones, laptop carrying cases, protective cases, covers and sleeves for tablet computers, fragrances, cosmetics, skin and personal care products, cosmetic brushes, hair accessories and ornaments in Class 035. |

11.     The above U.S. registrations for the MARC JACOBS Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. The registrations for the MARC JACOBS Trademarks constitute *prima facie* evidence of their validity and of the MJ Entities' exclusive right to use the MARC JACOBS Trademarks pursuant to 15 U.S.C. § 1057(b). The MARC JACOBS Trademarks have been used exclusively and continuously by the MJ Entities for many years, and have never been abandoned. True and correct copies of the United States Registration Certificates for the above-listed MARC JACOBS Trademarks are attached hereto as **Exhibit 1**.

12.     The MARC JACOBS Trademarks have achieved tremendous fame and recognition, which has only added to the distinctiveness of the marks. As a result, the MARC JACOBS Trademarks are both famous marks and valuable assets. As such, the MJ Entities have built substantial goodwill in the MARC JACOBS Trademarks, which is of incalculable and inestimable value to the MJ Entities.

13.     The MARC JACOBS Trademarks have been widely promoted, both in the United States and throughout the world. In fact, the MJ Entities have expended millions of dollars in advertising, promoting and marketing featuring the MARC JACOBS Trademarks. MARC JACOBS Products have also been the subject of extensive unsolicited publicity resulting from their high-quality, innovative designs and renown as desired luxury items. The MJ Entities augment this unsolicited media coverage with extensive paid advertising featuring internationally-known celebrities. For example, the MARC JACOBS' Fall 2015 advertising campaign featured Cher, Christy Turlington, Emily Ratajkowski, Sofia Coppola, Willow Smith, and Winona Ryder, and the MARC JACOBS' Spring 2016 advertising campaign featured Lana Wachowski, Sandra Bernhard, Bette Midler, Juliette Lewis, Christina Ricci, Sky Ferreira, and

Bella Hadid.  More recently, Christy Turlington was the face of the MARC JACOBS' Fall 2019 campaign.  Because of these and other factors, the MARC JACOBS name and the MARC JACOBS Trademarks have become famous throughout the United States.

14.    The MARC JACOBS Trademarks are also used in connection with the MARC JACOBS fashion shows held in New York, New York during New York Fashion Week.  The MARC JACOBS fashion shows receive a great deal of unsolicited press and critical acclaim from fashion magazines, blogs and trade publications, for example, Vogue.com, HarpersBazaar.com, Fashionista.com, thecut.com, and Women's Wear Daily ("WWD").

15.    The MARC JACOBS Trademarks are distinctive when applied to the MARC JACOBS Products, signifying to the purchaser that the products come from the MJ Entities and are manufactured to the MJ Entities' quality standards.  The MJ Entities maintain quality control standards, and MARC JACOBS Products are inspected and approved by or on behalf of the MJ Entities prior to distribution and sale.

16.    The MJ Entities operate a website at marcjacobs.com where genuine MARC JACOBS Products are promoted and sold.  The marcjacobs.com website features proprietary content, images and designs exclusive to the MJ Entities.

17.    The MJ Entities have expended substantial time, money, and other resources in developing, advertising and otherwise promoting and protecting the MARC JACOBS Trademarks.  As a result, products bearing the MARC JACOBS Trademarks are widely recognized and exclusively associated by consumers, the public, and the trade as being high-quality products sourced from the MJ Entities.  The MJ Entities run a multi-million-dollar operation, and MARC JACOBS Products are among the most popular of their kind in the world.

**The Defendants**

18.     Defendants are individuals and business entities of unknown makeup who own and/or operate one or more of the e-commerce stores under at least the Seller Aliases identified on Schedule A and/or other seller aliases not yet known to the MJ Entities. Upon information and belief, Defendants reside and/or operate in the People's Republic of China or other foreign jurisdictions with lax trademark enforcement systems, or redistribute products from the same or similar sources in those locations. Defendants have the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b).

19.     On information and belief, Defendants either individually or jointly operate one or more e-commerce stores under the Seller Aliases listed in Schedule A attached hereto. Tactics used by Defendants to conceal their identities and the full scope of their operation make it virtually impossible for the MJ Entities to learn Defendants' true identities and the exact interworking of their counterfeit network. If Defendants provide additional credible information regarding their identities, the MJ Entities will take appropriate steps to amend the Complaint.

## IV.   DEFENDANTS' UNLAWFUL CONDUCT

20.     The success of the MARC JACOBS brand has resulted in its significant counterfeiting. Consequently, the MJ Entities have a worldwide anti-counterfeiting program and regularly investigate suspicious e-commerce stores identified in proactive Internet sweeps and reported by consumers. In recent years, the MJ Entities have identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which were offering for sale and/or selling Counterfeit MARC JACOBS Products to consumers in this Judicial District and throughout the United States. E-commerce sales, including through e-commerce stores like those of Defendants, have resulted in a sharp increase in the shipment of

unauthorized products into the United States. **Exhibit 2**, Excerpts from Fiscal Year 2018 U.S. Customs and Border Protection ("CBP") Intellectual Property Seizure Statistics Report. Over 90% of all CBP intellectual property seizures were smaller international mail and express shipments (as opposed to large shipping containers). *Id*. Over 85% of CBP seizures originated from mainland China and Hong Kong. *Id*. Counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue.

21.     Third party service providers like those used by Defendants do not adequately subject new sellers to verification and confirmation of their identities, allowing counterfeiters to "routinely use false or inaccurate names and addresses when registering with these Internet platforms." **Exhibit 3**, Daniel C.K. Chow, *Alibaba, Amazon, and Counterfeiting in the Age of the Internet*, NW. J. INT'L L. & BUS. (forthcoming 2020), at 24; *see also*, report on "Combating Trafficking in Counterfeit and Pirated Goods" prepared by the U.S. Department of Homeland Security's Office of Strategy, Policy, and Plans (January 24, 2020) attached as **Exhibit 4** and finding that on "at least some e-commerce platforms, little identifying information is necessary for a counterfeiter to begin selling" and recommending that "[s]ignificantly enhanced vetting of third-party sellers" is necessary. Counterfeiters hedge against the risk of being caught and their websites taken down from an e-commerce platform by preemptively establishing multiple virtual store-fronts. **Exhibit 4** at p. 22. Since platforms generally do not require a seller on a third-party marketplace to identify the underlying business entity, counterfeiters can have many different profiles that can appear unrelated even though they are commonly owned and operated. **Exhibit 4** at p. 39. Further, "Internet commerce platforms create bureaucratic or technical hurdles in

helping brand owners to locate or identify sources of counterfeits and counterfeiters." **Exhibit 3** at 25.

22.     Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit MARC JACOBS Products to residents of Illinois.

23.     Defendants concurrently employ and benefit from substantially similar advertising and marketing strategies.  For example, Defendants facilitate sales by designing the e-commerce stores operating under the Seller Aliases so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers.  E-commerce stores operating under the Seller Aliases appear sophisticated and accept payment in U.S. dollars via credit cards, Alipay, Amazon Pay, Western Union and/or PayPal.  E-commerce stores operating under the Seller Aliases often include content and images that make it very difficult for consumers to distinguish such stores from an authorized retailer.  The MJ Entities have not licensed or authorized Defendants to use any of the MARC JACOBS Trademarks, and none of the Defendants are authorized retailers of genuine MARC JACOBS Products.

24.     Many Defendants also deceive unknowing consumers by using the MARC JACOBS Trademarks without authorization within the content, text, and/or meta tags of their e-commerce stores in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for MARC JACOBS Products.  Other e-commerce stores operating under Seller Aliases omit using MARC JACOBS Trademarks in the item title to evade enforcement efforts, while using strategic item titles and descriptions that will trigger their listings when consumers are searching for MARC JACOBS Products.

25.     On information and belief, Defendants have engaged in fraudulent conduct when registering the Seller Aliases by providing false, misleading, and/or incomplete information to e-commerce platforms.   On information and belief, certain Defendants have anonymously registered and maintained Seller Aliases to prevent one from learning their true identities and the scope of their e-commerce operation.

26.     On information and belief, Defendants regularly register or acquire new seller aliases for the purpose of offering for sale and selling Counterfeit MARC JACOBS Products. Such seller alias registration patterns are one of many common tactics used by the Defendants to conceal their identities and the full scope and interworking of their counterfeiting operation, and to avoid being shut down.

27.     Even though Defendants operate under multiple fictitious aliases, the e-commerce stores operating under the Seller Aliases often share unique identifiers, such as templates with common design elements that intentionally omit any contact information or other information for identifying Defendants or other Seller Aliases they operate or use.  E-commerce stores operating under the Seller Aliases include other notable common features, such as use of the same registration patterns, accepted payment methods, check-out methods, keywords, illegitimate search engine optimization (SEO), advertising tactics, similarities in price and quantities, the same incorrect grammar and misspellings, and/or the use of the same text and images. Additionally, Counterfeit MARC JACOBS Products for sale by the Seller Aliases bear similar irregularities and indicia of being counterfeit to one another, suggesting that the Counterfeit MARC JACOBS Products were manufactured by and come from a common source and that Defendants are interrelated.

14

28.     On information and belief, Defendants are in constant communication with each other and regularly participate in QQ.com chat rooms and through websites such as sellerdefense.cn, kaidianyo.com and kuajingvs.com regarding tactics for operating multiple accounts, evading detection, pending litigation, and potential new lawsuits.

29.     Counterfeiters such as Defendants typically operate under multiple Seller Aliases and payment accounts so that they can continue operation in spite of the MJ Entities' enforcement efforts.  On information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their financial accounts to off-shore bank accounts outside the jurisdiction of this Court to avoid payment of any monetary judgment awarded to the MJ Entities.  Indeed, analysis of financial account transaction logs from previous similar cases indicates that off-shore counterfeiters regularly move funds from U.S.-based financial accounts to off-shore bank accounts outside the jurisdiction of this Court.

30.     On information and belief, Defendants are an interrelated group of counterfeiters working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell Counterfeit MARC JACOBS Products in the same transaction, occurrence, or series of transactions or occurrences.  Defendants, without any authorization or license from the MJ Entities, have jointly and severally, knowingly and willfully used and continue to use the MARC JACOBS Trademarks in connection with the advertisement, distribution, offering for sale, and sale of Counterfeit MARC JACOBS Products into the United States and Illinois over the Internet.

31.     Defendants' unauthorized use of the MARC JACOBS Trademarks in connection with the advertising, distribution, offering for sale, and sale of Counterfeit MARC JACOBS Products, including the sale of Counterfeit MARC JACOBS Products into the United States,

including Illinois, is likely to cause and has caused confusion, mistake, and deception by and among consumers and is irreparably harming the MJ Entities.

**COUNT I**
**TRADEMARK INFRINGEMENT AND COUNTERFEITING (15 U.S.C. § 1114)**

32.     The MJ Entities hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

33.     This is a trademark infringement action against Defendants based on their unauthorized use in commerce of counterfeit imitations of the federally registered MARC JACOBS Trademarks in connection with the sale, offering for sale, distribution, and/or advertising of infringing goods.   The MARC JACOBS Trademarks are distinctive marks. Consumers have come to expect the highest quality from MARC JACOBS Products offered, sold or marketed under the MARC JACOBS Trademarks.

34.     Defendants have sold, offered to sell, marketed, distributed, and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products using counterfeit reproductions of the MARC JACOBS Trademarks without the MJ Entities' permission.

35.     Plaintiff MJT is the exclusive owner of the MARC JACOBS Trademarks.  MJT's United States Registrations for the MARC JACOBS Trademarks (Exhibit 1) are in full force and effect.  Upon information and belief, Defendants have knowledge of the MJ Entities' rights in the MARC JACOBS Trademarks, and are willfully infringing and intentionally using counterfeits of the MARC JACOBS Trademarks.   Defendants' willful, intentional and unauthorized use of the MARC JACOBS Trademarks is likely to cause and is causing confusion, mistake, and deception as to the origin and quality of the Counterfeit MARC JACOBS Products among the general public.

16

36.     Defendants' activities constitute willful trademark infringement and counterfeiting under Section 32 of the Lanham Act, 15 U.S.C. § 1114.

37.     The MJ Entities have no adequate remedy at law, and if Defendants' actions are not enjoined, the MJ Entities will continue to suffer irreparable harm to their reputation and the goodwill of the well-known MARC JACOBS Trademarks.

38.     The injuries and damages sustained by the MJ Entities have been directly and proximately caused by Defendants' wrongful reproduction, use, advertisement, promotion, offering to sell, and sale of Counterfeit MARC JACOBS Products.

## COUNT II
## FALSE DESIGNATION OF ORIGIN (15 U.S.C. § 1125(a))

39.     The MJ Entities hereby re-allege and incorporate by reference the allegations set forth in the preceding paragraphs.

40.     Defendants' promotion, marketing, offering for sale, and sale of Counterfeit MARC JACOBS Products has created and is creating a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with the MJ Entities or the origin, sponsorship, or approval of Defendants' Counterfeit MARC JACOBS Products by the MJ Entities.

41.     By using the MARC JACOBS Trademarks on the Counterfeit MARC JACOBS Products, Defendants create a false designation of origin and a misleading representation of fact as to the origin and sponsorship of the Counterfeit MARC JACOBS Products.

42.     Defendants' false designation of origin and misrepresentation of fact as to the origin and/or sponsorship of the Counterfeit MARC JACOBS Products to the general public involves the use of counterfeit marks and is a willful violation of Section 43 of the Lanham Act, 15 U.S.C. § 1125.

43.     The MJ Entities have no adequate remedy at law and, if Defendants' actions are not enjoined, the MJ Entities will continue to suffer irreparable harm to the reputation and the goodwill of the MARC JACOBS Trademarks.

**PRAYER FOR RELIEF**

WHEREFORE, the MJ Entities pray for judgment against Defendants as follows:

1) That Defendants, their affiliates, officers, agents, servants, employees, attorneys, confederates, and all persons acting for, with, by, through, under, or in active concert with them be temporarily, preliminarily, and permanently enjoined and restrained from:

   a. using the MARC JACOBS Trademarks or any reproductions, counterfeit copies or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine MARC JACOBS Product or is not authorized by the MJ Entities to be sold in connection with the MARC JACOBS Trademarks;

   b. passing off, inducing, or enabling others to sell or pass off any product as a genuine MARC JACOBS Product or any other product produced by the MJ Entities, that is not the MJ Entities' or not produced under the authorization, control, or supervision of the MJ Entities and approved by the MJ Entities for sale under the MARC JACOBS Trademarks;

   c. committing any acts calculated to cause consumers to believe that Defendants' Counterfeit MARC JACOBS Products are those sold under the authorization, control or supervision of the MJ Entities, or are sponsored by, approved by, or otherwise connected with the MJ Entities;

d. further infringing the MARC JACOBS Trademarks and damaging the MJ Entities' goodwill; and

e. manufacturing, shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for the MJ Entities, nor authorized by the MJ Entities to be sold or offered for sale, and which bear any of the MJ Entities' trademarks, including the MARC JACOBS Trademarks, or any reproductions, counterfeit copies, or colorable imitations thereof;

2) Entry of an Order that, upon the MJ Entities' request, those with notice of the injunction, including, without limitation, any online marketplace platforms such as eBay, AliExpress, Alibaba, Amazon, Wish.com and Dhgate, (collectively, the "Third Party Providers") shall disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the MARC JACOBS Trademarks;

3) That Defendants account for and pay to the MJ Entities all profits realized by Defendants by reason of Defendants' unlawful acts herein alleged, and that the amount of damages for infringement of the MARC JACOBS Trademarks be increased by a sum not exceeding three times the amount thereof as provided by 15 U.S.C. § 1117;

4) In the alternative, that the MJ Entities be awarded statutory damages for willful trademark counterfeiting pursuant to 15 U.S.C. § 1117(c)(2) of $2,000,000 for each and every use of the MARC JACOBS Trademarks;

5) That the MJ Entities be awarded their reasonable attorneys' fees and costs; and

6) Award any and all other relief that this Court deems just and proper.

Dated this 3rd day of January 2020.    Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080 / 312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law

*Counsel for Plaintiffs Marc Jacobs Trademarks,*
*LLC and Marc Jacobs International, LLC*